## NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC.

### v.

## The HOWARD P. FOLEY COMPANY, et al.

### Civ. No. HM78–340.

United States District Court,
D. Maryland.

Sept. 10, 1980.

Alan I. Baron, Peter H. Gunst and Frank, Bernstein, Conaway & Goldman, Baltimore, Md.; Guy Farmer and Farmer, Shibley, McGuinn & Flood, Washington, D. C., for plaintiffs National Electrical Contractors Ass'n, Inc.; Walter L. Bost, Frank Hawkins, George Sumrow, Jr., Herbert W. Bruckner, Curtis L. Williams, Bernard L. Carlin, Frank H. Bertke, H. E. Autrey, Donald E. Cates, Carl T. Hinote, Joe R. Devish, John D. Hilburn, Sr., Allen L. Bader, Warren E. Losh, Charles W. Stroupe, Kenneth H. Rines, James L. Grant, William M. Alberson, Jr., Dean J. McDonald, as collection agents for the National Electrical Industry Fund; and for James A. Chilko, Manager, Kern County Chapter of NECA, Inc.

Thomas M. Galloway, Jr., Mobile, Ala., for plaintiff Frank Hawkins.

Larry L. Evans, Houston, Tex., for plaintiff George Sumrow, Jr.

Henry T. Wickham, Bradfute W. Davenport, Jr., D. Eugene Webb, Jr., Richmond, Va., for plaintiff Curtis L. Williams.

Clayton Byam, William J. Tighe, Omaha, Neb., for plaintiff Bernard L. Carlin.

Herschbach, Tracy, Johnston, Bertani & Wilson, Joliet, Ill., for plaintiffs Robert W. Colgan, John Ostrow, Frank H. Bertke, H. E. Autrey, Donald E. Cates, Carl T. Hinote, Joe R. Devish, John D. Hilburn, Sr., Allen L. Bader, Warren E. Losh and Charles W. Stroupe, Trustees of the National Electrical Industry Fund.

Clancy & Callahan, Newark, N. J., for plaintiff Kenneth H. Rines.

Donald F. Daughton, James P. Walsh and Daughton, Feinstein & Wilson, Phoenix, Ariz., John P. Frank, Marty Harper, Charles G. Case, II, and Lewis & Roca, Phoenix, Ariz., for plaintiff James L. Grant.

James W. Moore and Friday, Eldredge & Clark, Little Rock, Ark., for plaintiff William M. Alberson, Jr.

Christopher A. Brose and Raymond H. Levy, Inc., San Francisco, Cal., for plaintiff James A. Chilko, Manager, Kern County Chapter of NECA, Inc.

Martin E. Gerel and Ashcraft & Gerel, Rockville, Md., for plaintiff Jose D. Abarza.

Wilbur D. Preston, Jr., Robert M. Wright, Nevett Steele, Jr., Ward B. Coe, III, Gerson B. Mehlman, James R. Chason, of Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md.; Caine O'Rear, III, Mobile, Ala.; Anthony J. Obadal, Alan D. Cirker, Howard J. Kaufman and Zimmerman & Obadal, Washington, D.C.; Ira Genberg, Peter R. Spanos and Stokes & Shapiro, Atlanta, Ga.; Donald W. Lemons, Parker, Fenderson, Pollard & Press, Richmond, Va.; Willis Witt, Houston, Tex.; John W. Powers, Joel H. Kaplan and Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill.; Richard Duffield, Arthur H. Miller and Fish, Briney, Duffield, Miller, Young & Adamson, Tucson, Ariz.; Daniel J. McAuliffe and Snell & Willmer, Phoenix, Ariz.; Gregory G. Smith and H. Clay Robinson, Fort Smith, Ark.; Allen M. Blake, Tampa, Fla.; William F. Hoefs, James P. Hargarten, Nancy E. Smith and Thelen, Marrin, Johnson & Bridges, San Francisco, Cal.; Alfred J. Dirska, Upper Marlboro, Md., for defendant The Howard P. Foley Company.

Allen L. Overcash and Woods, Aitken, Smith, Greer, Overcash & Spangler, Lincoln, 1:Neb.; Anthony J. Obadal, Alan D. Cirker, Howard J. Kaufman and Zimmerman & Obadal, Washington, D.C.; Ira Genberg, Peter R. Spanos and Stokes & Shapiro, Atlanta, Ga.; Nevett Steele, Jr., Ward B. Coe, III, and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., for defendant Commonwealth Elec. Co.

Shanley & Fisher, Newark, N. J., for defendant Bechtel Power Corp.

MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

Collection agents for the National Electrical Industry Fund (NEIF) have brought these contract actions to recover monies various electrical contractors allegedly owe the fund, pursuant to certain labor agreements with the International Brotherhood of Electrical Workers (IBEW). Similar collection cases have been brought in other courts throughout the country, and many of the cases at bar have been transferred here from other jurisdictions.

The NEIF was created through an agreement between the National Electrical Contractors Association (NECA) and the IBEW, entered into on December 8, 1976. That, and the NEIF in particular, are the focus of an antitrust action presently pending in this court. (NCA, et al. v. NECA, et al., 498 F.Supp. 510). The plaintiffs in the antitrust action, many of whom are defendants in the collection cases, allege that the NECA-IBEW agreement to establish the NEIF amounts to a price-fixing conspiracy and a per se violation of § 1 of the Sherman Act.

On May 1, 1979, the court heard oral argument on the motions of several of the collection-case defendants to dismiss the contract actions, or in the alternative to stay them pending the outcome of the antitrust case. By a Memorandum and Order dated May 21, 1979, the court denied the motions. On May 31, 1979, the defendants filed a motion for reconsideration of the court's order denying the motions for a stay. In the year that has elapsed since then, the antitrust case has progressed considerably, affording the court a clearer understanding of the NEIF and the issues involved in the collection cases. In light of that understanding, and after consideration of the arguments on both sides, the court has concluded that the motions for reconsideration must be granted and the collection cases stayed pending the resolution of Civil No. HM77–1302.

As the court noted in its opinion of May 21, 1979, the propriety of a stay in these cases depends on whether the defendants may assert an antitrust defense in the contract actions. If such a defense is permissible, considerations of judicial economy would warrant staying the proceedings until the antitrust issues are resolved in the

price–fixing action now pending. If such a defense is barred, there is no reason why the contract cases should await the outcome of the antitrust case.

In *Kelly v. Kosuga*, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959), the Supreme Court noted, "As a defense to an action based on contact, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court." *Id.* at 518, 79 S.Ct. at 431 (footnote omitted). *Kelly* stands for the principle that a defendant in a contract action may not raise an antitrust claim to avoid the contract, but must instead rely on the remedies provided in the Sherman Act. *See id.* at 520, 79 S.Ct. at 431. The reasons behind that policy are delineated in this court's previous opinion. *Kelly* did define one narrow exception, however: a defendant may assert an antitrust defense "where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the [Sherman] Act." *Id.* at 520, 79 S.Ct. at 432. *Huge v. Long's Hauling Co., Inc.*, 590 F.2d 457, 460 (3d Cir. 1978); *Viacom International, Inc. v. Tandem Productions, Inc.*, 526 F.2d 593, 598 (2d Cir. 1975); *Lewis v. Seanor Coal Co.*, 382 F.2d 437, 441 (3d Cir. 1967). In the court's view, the facts of the present cases do fall within that exception.

In its earlier opinion, the court found that the *Kelly* exception did not apply, primarily because "[t]he antitrust claims in HM77–1302, the antitrust action, are complex and, to date, ill–defined after almost one and one–half years of discovery." Memorandum and Order at 4. Since May of 1979, the antitrust case has remained complex, but its issues have been brought much more clearly into focus through the briefing and arguing of several preliminary motions. In a memorandum opinion in that case dated September 9, 1980, the court has concluded that the NECA–IBEW agreement establishing the NEIF amounts to a *per se* violation of § 1 of the Sherman Act, in that the agreement is an illegal conspiracy to manipulate the price of procuring labor contracts with the IBEW. The court has found that the purpose of the agreement was to reduce bidding competition among electrical con-tractors by stabilizing their cost of doing business. Those findings make it apparent that if the antitrust defense were disallowed in the collection cases, the court would be sanctioning the plaintiffs' efforts to compel payment into the NEIF, and would therefore be "enforcing the precise conduct made unlawful by the [Sherman] Act."

Several considerations support the court's conclusion that a stay is appropriate in these cases. In general, the policies and considerations that have led other courts to bar an antitrust defense are either absent from or less weighty in the cases here. More specifically, the contracts the present plaintiffs seek to enforce are not readily divisible from the alleged antitrust violation; each contract can be viewed as "an intelligible economic transaction in itself" only if it is viewed *without* the NEIF provision. *See Viacom, supra,* 526 F.2d at 598, *quoting Kelly, supra,* 358 U.S. at 521, 79 S.Ct. at 432. The very provision of the contract sought to be enforced is the essence of the illegal agreement between NECA and the IBEW.

Furthermore, it appears unlikely that granting a stay will unjustly enrich the defendants or cause more inequities than it will remedy. *See Huge, supra,* 590 F.2d at 459. One of the Supreme Court's primary concerns in *Kelly* was that of "preventing people from getting other people's property for nothing when they purport to be buying it." *Kelly, supra,* 358 U.S. at 520–21, 79 S.Ct. at 432, *quoting Continental Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486 (1909) (Holmes, J., dissenting). This court does not believe a stay in the present cases would frustrate that policy. In the plaintiffs' view, the defendants have defaulted on their obligation to pay for NECA services, funded by the NEIF. However, what the defendants contracted for was IBEW labor, and they purported to be paying for that. As the court explains in its opinion of September 9, 1980, in HM77–1302, the NEIF contributions are wholly unrelated to the employee compensation that is the usual

*quid pro quo* in a labor contract.[1] The fact that NECA and the IBEW created a fund to finance NECA services, and illegally agreed to make an obligation to the fund part of every IBEW labor contract, does not imply that the defendants here "purported to buy" NECA services. It is possible that the NEIF provision constituted some other form of *quid pro quo* in the negotiation of the contracts at issue. This court recognized that possibility in its original opinion denying the stay. Memorandum and Order at 4. Nevertheless, the chance that a stay might work some inequity only indirectly related to employee compensation cannot compel the court to adopt the anomalous position of declaring the NEIF illegal, and at the same time permitting its enforcement.

For all the foregoing reasons, the court is persuaded that the present cases fall within the narrow exception to the rule in *Kelly v. Kosuga, supra.* Because the defendants would therefore be entitled to raise an antitrust defense in the contract actions against them, and because the antitrust issues that would be raised are identical to those presently being litigated in Civil No. HM77-1302, the interests of judicial economy will best be served if the contract actions are stayed pending the final decision of the antitrust case. Accordingly, it is this *10th* day of September 1980, by the United States District Court for the District of Maryland,

*ORDERED*:

(1) that the defendants' motion for reconsideration of this court's order of May 21, 1979 be, and the same hereby is, *Granted*;

(2) that the aforesaid order be, and the same hereby is, *Vacated* as to the motions to stay only;

(3) that the defendants' motions to stay be, and the same hereby are, *Granted*; and

(4) that the Clerk of the Court mail a copy of this Memorandum and Order to each of the parties.

1. The Third Circuit in both *Lewis, supra,* and *Huge, supra,* was particularly hesitant to permit avoidance of the contracts involved because the monies at issue represented either employee compensation for services already rendered or contributions to an employee pen-

sion fund. Because the NEIF contributions cannot be characterized as employee compensation of any type, permitting the antitrust defense in the present cases is more appropriate than it would have been in the Third Circuit cases.